

U.S. Department of Justice

United States Attorney
Eastern District of New York

JAM

271 Cadman Plaza East
Brooklyn, New York 11201

December 13, 2022

By ECF

The Honorable Hector Gonzalez
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Yevgeniy Grinin et al.
                Docket No. 22-CR-409 (S-1) (HG)

Dear Judge Gonzalez:

      The government writes regarding bail for defendants Alexey Brayman and Vadim Yermolenko, who have been arrested and charged in the above-referenced superseding indictment (the "Superseding Indictment"). Defendant Vadim Konoshchenok has also been taken into custody in Estonia and will undergo extradition proceedings to the United States.

      The government respectfully requests that the Court set bail in the amount of $250,000 for Brayman and $500,000 for Yermolenko, with each secured by real property or other reliable surety. Both defendants should also be required to surrender their passports. As described in the Superseding Indictment and herein, the defendants present flight risks and have significant ties to foreign jurisdictions, including non-extradition countries.[1]

I.      Relevant Background

      The Superseding Indictment charges seven defendants with facilitating the activities of the Serniya procurement network (the "Serniya Network"), which operated under the direction of Russia's intelligence services to acquire sensitive military and dual use technologies for the Russian military, defense sector and research institutions. In or about March 2022, both the U.S. Department of Commerce and the U.S. Department of the

---

[1] Detailed herein is a proffer of the relevant facts and a discussion of the applicable law pertaining to the pretrial detention of the defendant. See United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (government entitled to proceed by proffer in detention hearings).

Treasury's Office of Foreign Assets Control ("OFAC") levied sanctions on several individuals and entities in the Serniya Network. According to OFAC's press release, the designation was part of "its crackdown on the Kremlin's sanctions evasion networks and technology companies, which are instrumental to the Russian Federation's war machine."

One of the Serniya Network's primary operatives in the United States was defendant Boris Livshits, a Russian national who formerly lived in Brooklyn, New York. As alleged in the Superseding Indictment, Livshits would interface directly with U.S. companies and purchase export-controlled items requested by the Serniya Network for Russian end users. In doing so, Livshits would misrepresent and omit material information to companies, banks and government agencies, including information about how the item would be used, the various parties involved in the transaction, and the identity of the ultimate end user. Livshits also utilized dozens of U.S.-based front companies and bank accounts that were used to obfuscate the role of Russian or sanctioned entities in transactions.

As described in the Superseding Indictment, the defendants Brayman and Yermolenko worked closely with Livshits in furtherance of the scheme. Both Brayman and Yermolenko would alter, forge, and destroy shipping documents, invoices and other business records to unlawfully export items from the United States. Yermolenko also opened numerous shell companies and bank accounts, made structured deposits and withdrawals, and made material misrepresentations to U.S. financial institutions in order facilitate the scheme and avoid detection. Brayman used his residence in New Hampshire as a frequent transshipment point for items that were unlawfully exported from the U.S. and ultimately destined for Russia. These shipments continued after the March 2022 sanctions were levied on the Serniya Network.

In addition to other transshipment points throughout the world, Brayman sent illicit shipments to Konoshchenok in Estonia, where Konoshchenok would smuggle U.S.-origin items across the border into Russia. As described in the Superseding Indictment, during one such attempt on October 27, 2022, Konoshchenok was detained attempting to cross into Russia from Estonia with approximately 35 different types of semiconductors and electronic components, including several U.S.-origin and export-controlled items ordered by Livshits.

Konoshchenok has also been repeatedly stopped by Estonian border officials attempting to smuggle tens of thousands of rounds worth of American-made and export-controlled ammunition into Russia, including 6.5 mm, 7 mm, .338 and .300 Winchester Magnum rounds, which are commonly used by snipers, as well as military-grade .223 rounds. In doing so, Konoshchenok used an Estonian front company called "Stonebridge Resources" and communicated frequently with Livshits and other coconspirators about sourcing, transporting and paying for the ammunition. For example, in one message, Konoshchenok explicitly stated that he will "take the other car [with] the bullets, the shell casings." In another message exchange, Konoshchenok is given an order of "6.5 mm 147 gn – 1000 pcs . . . 6.5 mm 156 gn – 900 pcs . . . 7 mm 190gn – 400 pcs . . . .284win – 100 pcs . . . The first three are bullets. The fourth one is casings." Konoshchenok is clear that his fee is "10%" because he "can't do less. Sanctions . . . Sanction item for 10%." To consummate one transaction, Livshits

advised Konoshchenok to "fabricate" or "draw" the "receipt" and other documents. In another message, Livshits asked Konoshchenok if he can "send the money to Stonebridge" and misrepresent the purpose of the payment, "for example for auto parts."

Konoshchenok is suspected of being an active Russian intelligence operative. In electronic communications, Konoshchenok explicitly identified himself as a "Colonel" with Russia's Federal Security Service ("FSB"), the successor agency to the Soviet KGB, which oversaw the Serniya Network. In one electronic message exchange, Konoshchenok described how he just received a new "passport photo" and enclosed a photograph of himself wearing his FSB uniform:



Incident with Konoshchenok's arrest on December 6, 2022, Estonian authorities searched a warehouse held in the name of Konoshchenok's son and recovered approximately 375 pounds worth of ammunition.

II.   Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Section 3141, et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. See 18 U.S.C. § 3142(e) (a judicial officer "shall" order detention if "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of

any other person and the community"). A finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987).

In addition, the Bail Reform Act lists the following factors to be considered in the detention analysis: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. See 18 U.S.C. § 3142(g). As discussed below, these factors weigh against pretrial release and necessitate a sizable bail package.

III. The Court Should Set Substantial and Securitized Bail

As set forth below, the factors to be considered in the detention analysis show that the defendants present substantial risks of flight that can only be mitigated by a substantial, fully secured bond.

The charged offenses are extremely serious. The defendants are charged with participating in a transnational fraud, money laundering and sanctions evasion scheme controlled by a foreign power that is actively engaged in armed conflict. While the investigation is ongoing, the evidence amassed against Brayman and Yermolenko is substantial, including, inter alia, (1) electronic communications between Brayman, Yermolenko, Livshits and other coconspirators; (2) invoices, shipping documents and other business records containing false information, including official forms filed with the Department of Commerce and other government agencies; (3) bank and tax records reflecting the establishment and use of shell companies and illicit money movements; and (4) items recovered from Brayman's residence during the execution of a court-authorized search warrant, including documents related to export-controlled items and multiple cell phones of Chinese or foreign origin. See, e.g., United States v. Fishenko, No. 12-CR-626, 2013 WL 3934174, at *2 (E.D.N.Y. July 30, 2013) (evidence of "pertinent recorded conversations and email exchanges that reveal [the defendant's] role in the conspiracy" weighed against release). The defendants also face a significant term of incarceration should they be convicted, which provides powerful incentive for them to flee. See, e.g., United States v. Bruno, 89 F. Supp. 3d 425, 431 (E.D.N.Y. 2015) ("When the sentence . . . upon conviction is likely to be long . . . a defendant has stronger motives to flee.").

While both Brayman and Yermolenko have strong ties to the United States and their respective home districts, they both maintain significant connections to foreign countries, and the government would have limited ability to recapture or extradite them if they were to flee. Notably, Brayman is an Israeli citizen. While the government acknowledges that Brayman has been aware of the investigation since the search warrant execution at his home in October 2022, the fact that he has now been indicted necessarily increases the risk of potential flight.

4

IV.	Conclusion

        For all of these reasons, the government respectfully submits that the defendants represent a serious risk of flight if released on bond.  As such, a secured bond of at least $500,000 for Yermolenko, a secured bond of at least $250,000 for Brayman, and surrender of their passports and travel documents are necessary to ensure their return to court.

        Respectfully submitted,

        BREON PEACE
        United States Attorney

By:	/s/ Artie McConnell
        Artie McConnell
        Assistant U.S. Attorney
        (718) 254-7000

cc:	Clerk of Court (by ECF)
    Defense Counsel (by email)